# 97 DTA 111

## TRIBUNAL DE CIRCUITO DE APELACIONES
## CIRCUITO REGIONAL DE SAN JUAN

AUTORIDAD METROPOLITANA DE AUTOBUSES
Querellada-Recurrente

v.

HERMANDAD DE EMPLEADOS DE OFICINA, COMERCIO Y RAMAS ANEXAS (H.E.O.)
Querellante-Recurrida

Núm. KLRA-97-00043

San Juan, Puerto Rico, a 8 de mayo de 1997

Panel integrado por su Presidenta, la Juez Alfonso de Cumpiano
y los Jueces Miranda De Hostos y Giménez Muñoz

Giménez Muñoz, Juez Ponente

## TEXTO COMPLETO DE LA RESOLUCION

Se recurre de la decisión de la Junta de Relaciones del Trabajo de Puerto Rico relativa a una solicitud de clarificación de la unidad apropiada mediante la cual se ordenó la inclusión en la unidad de varios puestos secretariales de la Autoridad Metropolitana de Autobuses.

### I

El 18 de marzo de 1992 la Hermandad de Empleados de Oficina, Comercio y Ramas Anexas (Hermandad) de la Autoridad Metropolitana de Autobuses (AMA) presentó ante la Junta de Relaciones del Trabajo de Puerto Rico (Junta) una petición para la clarificación de la unidad apropiada que representa la Hermandad. La División de Investigaciones de la Junta realizó un estudio al respecto y el 13 de julio de 1992 el Jefe Examinador emitió un informe sobre el particular. Entre sus señalamientos recomendó que los puestos de Secretaria II en el Centro de Comunicación, Secretaria Ejecutiva en el Area de Programación y Desarrollo, Secretaria en la Sección de Presupuestos y Secretaria Ejecutiva en el Area de Suministros, se consideraran como plazas de empleados confidenciales. Luego de radicado un escrito de excepciones al informe, la Junta devolvió el caso a la División de Investigaciones. En el año 1996, esta división emitió un informe suplementario recomendando que la Secretaria de la Sección de Presupuestos y la Secretaria Ejec. de Suministros fueran incluidas en la unidad apropiada.

El 26 de septiembre de 1996, luego de celebrada vista ante un Oficial Examinador, la Junta adoptó parte de las recomendaciones emitidas por éste en su Informe Suplementario.

La Junta recomendó incluir los puestos ya mencionados en la unidad apropiada, a pesar de que la AMA sostenía que debían excluirse de toda unidad apropiada de negociación colectiva por ser éstos confidenciales e íntimamente ligados a la gerencia.

Inconforme con lo decidido, la AMA solicitó reconsideración el 15 de octubre de 1996, pero la Junta la denegó mediante resolución de 19 de diciembre de 1996, notificada el 20 de diciembre de 1996. Por tal razón se ha radicado el presente recurso *"para que se analice imparcialmente si estas*

*posiciones secretariales deben pasar a la [u]nión o, por el contrario, deben permanecer en la gerencia".*

La recurrente, AMA, imputa la comisión de dos errores que dice son causa de revocación, a saber, emitir una decisión reclasificando unos puestos de secretarias dentro de la unidad apropiada de negociación colectiva, sin entrevistar a las incumbentes ni a los supervisores y al ignorar las tareas confidenciales e íntimamente ligadas a la gerencia de los puestos secretariales.

## II

La Ley de Relaciones del Trabajo, 29 L.P.R.A. sec. 61, *et seq.*, no contiene disposición sobre el procedimiento de clarificación de unidad apropiada. Tampoco existe reglamentación para el procedimiento, siendo el mismo un diseño elaborado por la Junta. Se trata de un calco del mecanismo federal ▆ que allá se ha utilizado para añadir a una unidad apropiada ciertos empleados que al momento de formularse la petición no forman parte de ésta, pero que debían pertenecer a la misma porque comparten una misma comunidad de intereses. *Pérez Maldonado v. Junta,* 140 D.P.R ___ (1996), **96 J.T.S. 38;** *N.L.R.B. National Labor Board v. Magna Corp.,* 734 F. 2nd. 1057 (1984) La jurisprudencia ha identificado principalmente el procedimiento de clarificación de unidad apropiada en cinco situaciones en algunas de las cuales no es menester consultar a las personas que ocupan los empleos en cuestión, porque se presume que como dichos empleos son iguales a los que están incluidos en la unidad apropiada contratante, todos los empleados comparten el mismo interés en la representación. *N.L.R.B. v. Missisipi Power,* 769 F. 2nd. 276 (1985). En algunos casos, luego de la Junta haber certificado una unidad apropiada, ocurren cambios en los deberes y responsabilidades en los puestos de algunos que ameritan sean excluidos de la unidad apropiada. Tal es el caso en el que las nuevas circunstancias causan un conflicto de interés que destruye la comunidad de intereses que originalmente existió.

De otra parte ha sido resuelto por los tribunales federales que un grupo de empleados no pueden ser añadidos a una unidad existente mediante el procedimiento de clarificación, cuando antes habían sido intencional o históricamente excluidos de la unidad. Con el fin de salvaguardar su derecho a escoger su representante en la negociación colectiva, es necesario auscultar los empleados inicialmente excluidos de la unidad contratante. *N.L.R.B. v. Missisipi Power, supra.*

La composición de la unidad apropiada es cuestión de la exclusiva jurisdicción de la Junta. Esta determinación no ha de ser alterada si existe evidencia en el récord que la sustente, ausente otros indicios de que ha habido prejuicio, arbitrariedad, parcialidad o ilegalidad, por parte de la Junta. *Junta de Relaciones del Trabajo v. AMA,* 119 D.P.R 94 (1987)

En la determinación de la unidad apropiada el factor clave es el identificar una comunidad de intereses que comparten los empleados. En 22 Federal Procedure, Lawyers Edition, Section 52:1044, se expresa este pensamiento del siguiente modo:

*"The touchstone of appropriate unit determinations is whether the unit's members have a recognizable community of interest sufficiently distinct from other employees to warrant their inclusion in a single unit. In determining whether the unit petitioned for in a particular case is appropriate, the NLRB has, with court approval, traditionally looked to such factors as homogeneity and distinctness of units, previous bargaining history in the company and the industry, similarity of jobs and functions performed by employees, relationship of the proposed unit to the employer's organization, whether the employees are interchanged with other employees, the extent of common supervision, the area bargaining pattern, the geographic proximity of the various parts of the employer's operation, differences in methods of compensation, hours of work, and employment benefits, the amount of working time spent away from the plant, and the degree of contact with other employees. [...]."*

Respecto a empleados con tareas confidenciales, en la misma obra citada, 22 Federal Procedure, Lawyers Edition, Section 52:1070, se indica que:

*"An employee will be excluded from a bargaining unit as a confidential employee if the employee assists and acts in a confidential capacity with respect to a member of management, and the*

*employee's superior, with respect to whom such confidencial relationship exists, formulates, determines, and effectuates management policies in the field of labor relations. [... ].*

*Although an employee's access to compensation information has been considered as a factor in determining that the employee is a confidential employee, the NLRB generally will not exclude such an employee from a bargaining unit merely because of such access [..]."*

En torno a los señalamientos que formula la AMA en el caso ante nos, debemos tener presente que la Junta clarificó los puestos, no los reclasificó y que, al así hacer, evaluó los puestos, no los incumbentes, a la luz de las tareas o funciones individuales de cada uno. Pero como la AMA alega que las incumbentes no fueron entrevistadas, es preciso aclarar, como se dijo en *Pérez Maldonado v. Junta, supra,* que *"no es menester consultar a las personas que ocupan los empleos en cuestión, porque se presume que como dichos empleados son fundamentalmente iguales... todos comparten el mismo interés en la representación".* La Junta, además, tenía ante sí varios documentos, entre éstos las hojas de descripción de puestos, a base de los cuales efectuó una detallada exposición y análisis de esos deberes.

Son las funciones, precisamente, según la hoja de deberes y descripciones, indicativas de que no se trata de puestos de índole confidencial o íntimamente ligadas a la gerencia. Tampoco se trata de puestos que albergan un conflicto de interés con otras posiciones. Veamos.

-A-

El puesto de Secretaria III, en la Secretaría de Presupuestos, se dice debe excluirse de la unidad apropiada, porque debe transcribir el presupuesto. Ello pierde de vista el hecho de que se trata de un *"proyecto"* que es evaluado en distintas oficinas de la agencia, pasa a la oficina del primer mandatario del país, a la Oficina de Presupuesto General y finalmente a la Asamblea Legislativa para su análisis y aprobación. Es entonces que ese proyecto de presupuesto se convierte en un producto final con el que podrá contar el patrono.

La recurrente no señala la manera en que esa información, a la que ocasional y limitadamente pueda tener acceso el(la) incumbente del puesto en cuestión, pueda crearle situaciones conflictivas a la empresa o incluso entorpecer la paz industrial. Se trata sencillamente de tareas puramente secretariales, según la hoja de deberes. Además, los informes y demás documentos que pasa a maquinilla para la revisión, modificación y aprobación, no tienen un efecto que resulte significativo en las relaciones obrero-patronales. Por ello, la supuesta situación apocalística de la unión apoderándose de la negociación colectiva, es infundada.

El tratadista Charles J. Morris, en *The Developing Labor Law,* (B.N.A.) 2d ed., Vol. II, Wash. 1983, sostiene persuasivamente que:

*"The mere handling of or access to confidential business or labor relations information, including personnel and financial records, **is insufficient** by itself to render an employee 'confidential'. [...] Nor does the typing of confidential labor relations memoranda suffice to imply confidential status."* (Enfasis suplido).

Por lo expresado, concluimos que el puesto de Secretaria III, en la Secretaría de Presupuestos de la AMA, debe pertenecer a la unidad apropiada de la Hermandad, pues su desempeño no la coloca en una relación confidencial con las personas que formulan política obrero-patronal o tiene acceso o conocimiento de esta política. Este puesto, además, no tiene acceso regularmente a información confidencial relacionada con posibles cambios futuros de la empresa.

-B-

En relación al puesto de Secretaria Ejecutiva II, en el Area de Suministros, sostiene el patrono que la incumbente *"prepara cartas y correspondencia relacionada con acciones disciplinarias e informes que le sean delegados por el vicepresidente del área relacionada con H.E.O., adscritas al Area de Suministros [sic]",* lo que conlleva un conflicto de intereses con otros empleados.

El empleado que presenta conflicto de intereses con otros empleados, según definido por la Junta

en Autoridad de las Fuentes Fluviales de Puerto Rico, Caso Núm. P-2369, D-465, es aquel *"empleado cuyas recomendaciones, si se toman en cuenta, afectan o pueda afectar al personal de la empresa. Si estos empleados fuesen parte de la misma unidad apropiada de la que también fuesen los afectados por las recomendaciones, podrían surgir conflictos entre la organización obrera y la Gerencia resultar afectados los empleados que hacen las recomendaciones o quedar en situaciones difíciles entre ambas partes"*.

No vemos como un(a) empleado(a), sin ser supervisor(a), y con tareas de índole puramente secretarial, pueda presentar esos conflictos con otros empleados. Sus funciones son secretariales tradicionales clásicas y no existe indicio de que este(a) empleado(a) haga recomendaciones que puedan afectar el estatus de otros unionados.

Una revisión a la hoja de deberes del puesto en cuestión no demuestra que el(la) empleado(a) haga recomendaciones que puedan afectar el personal y aunque *"prepara cartas y correspondencia relacionadas con acciones disciplinarias"*, ello es tan sólo una de sus tareas secretariales.

De otra parte, no consideramos válido el argumento de que por tratarse de la Secretaria Ejecutiva del Vicepresidente de la Area de Suministros, quien responde al Presidente, se convierte el puesto en uno íntimamente ligado a la gerencia.

El término íntimamente ligado a la gerencia fue definido por la Junta en el caso de la Autoridad de Energía Eléctrica, PC-84, D-900. En ese caso se señaló que *"se aplica al empleado que sin ser supervisor, en alguna medida, puede afectar el estatus de los empleados al emitir un criterio o juicio personal o discrecional, que pueda influir en aquéllos que toman la decisión"*.

Como surge de esa definición, para que el puesto sea catalogado como uno íntimamente ligado a la gerencia, es menester que el empleado (a) emita un criterio o juicio, (b) que pueda afectar el status de los empleados, influir en aquellos que toman la decisión. Sin embargo, de la revisión de la hoja de deberes de este puesto de Secretaria en el Area de Suministros, vemos que no se le requiere ni autoriza y no es función suya la emisión de criterios o juicios que puedan afectar o influir en su supervisor. Poder influir o ejercer fuerza moral en el ánimo de otro, no es algo reservado para los de más alta jerarquía. Pero tampoco puede ello colegirse del mero hecho de ocupar una posición de Secretaria del Vicepresidente de una de varias áreas de la estructura corporativa.

Lo señalado no quiere decir que las incumbentes no puedan buscar ascender en rango y de ese modo u otro estar más ligados a la Gerencia. Pero para ello sera necesaria la evolución del puesto, la creación de nuevos puestos o el ascenso de las incumbentes a puestos ya existentes. Cuando ello ocurra, la Junta tomará las medidas que estime apropiadas para resolver, mediante la celebración de vistas, entrevistas e investigaciones, según corresponda.

### III
Por los fundamentos antes expuestos, denegamos la expedición del recurso de revisión solicitado.

Así lo acordó el Tribunal y lo certifica la Secretaria General.

Aida I. Oquendo Graulau
Secretaria General

**ESCOLIO 97 DTA 111**

**1.** Al implantar una norma tomada de otra jurisdicción, debe presumirse que se adopta también la interpretación y alcance que tenían en su lugar de origen. *Pueblo v. Reyes,* 100 D.P.R. 265 (1971).